UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA/ SEATTLE

CHRISTINA M.,

            Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

Case No. 3:22-cv-5574

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

…

Plaintiff has brought this matter for judicial review of defendant's denial of plaintiff's application for Supplemental Security Income disability benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court REVERSES and REMANDS for an award of benefits.

## I.   ISSUES FOR REVEW

1. Did the ALJ err in evaluating the medical opinion evidence?
2. Did the ALJ err in evaluating lay witness testimony?
3. Did the ALJ properly assess Plaintiff's symptom testimony?

1

## II. BACKGROUND

On December 5, 2018 Administrative Law Judge Vadim Mozyrsky ("ALJ") issued a decision finding that plaintiff was not disabled. AR 35–63. Plaintiff sought review in the U.S. District Court for the Western District of Washington, and On July 10, 2020, Magistrate Judge David W. Christel Issued a stipulated remand order. On September 17, 2020, the Appeals Council issued a remand order. AR 2015–2021.

On January 28, and May 21, 2021, the same ALJ held a hearing on remand; on June 24, 2021 the ALJ issued a new decision again finding that plaintiff was not disabled. AR 1877–1960. Plaintiff seeks review of the June 2021 decision.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## IV. DISCUSSION

In this case, the ALJ concluded that plaintiff had the severe, medically determinable impairments of obesity, ankylosing spondylitis, bilateral sacroiliitis, right greater trochanteric bursitis, chronic low back pain, right torn achilles tendon, osteoarthritis of the left knee, bilateral degenerative joint disc of the shoulders,

fibromyalgia, and mental conditions — variously described as depression, anxiety, bipolar disorder, posttraumatic stress disorder, personality disorder, alcohol use disorder, and cannabis disorder. AR 1884. The ALJ also concluded that plaintiff had the non-severe impairments of bilateral plantar fasciitis, obstructive sleep apnea, and migraine headaches. AR 1884–85.

Based on the limitations stemming from these impairments, the ALJ found that plaintiff could perform a reduced range of light work. AR 1887–88. Relying on the vocational expert ("VE") testimony, the ALJ found that plaintiff could not perform past relevant work but could perform jobs existing in significant numbers in the national economy. AR 1910. The ALJ determined that plaintiff was not disabled. AR 1912

A. <u>Whether the ALJ erred in evaluating medical opinion evidence</u>

Plaintiff assigns error to the ALJ's evaluation of medical opinions from Peter Weiss, Ph.D.; Mark Leveaux, MD.; and Ronald Sandoval, Ph.D. Dkt. 8 at 3–15.

Plaintiff filed her application[s] prior to March 27, 2017, therefore under the applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the ALJ may reject the opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

3

An examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes v. Bowen,* 881 F.2d 747, 752 (9th Cir. 1989)). "In order to discount the opinion of an examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831).

1. <u>Dr. Peter Weiss</u>

Peter Weiss, Ph.D., evaluated plaintiff in September of 2017 and completed a DSHS Psychological/ Psychiatric Evaluation. AR 913–920. Dr. Weiss's evaluation consisted of a clinical interview and a Personality Assessment Inventory ("PAI"). AR 919. Plaintiff's PAI profile was invalid because of negative distortion of her clinical presentation. *Id*. Dr. Weiss diagnosed plaintiff with major depressive disorder, recurrent, severe, with psychotic features, and PTSD. AR 915.

He noted that plaintiff's mood was depressed, and her affect was dysthymic but assessed her appearance, speech, attitude, and behavior as within normal limits. AR 917. Dr. Weiss also completed a medical source statement where he opined that plaintiff had a severe limitation in her ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, communicate and perform effectively in a work setting, and complete a normal workday and work week without interruptions from psychologically-based symptoms. AR 916. Dr. Weiss indicated a marked limitation in plaintiff's ability to maintain appropriate behavior in a work setting and set realistic goals and plan independently. *Id*. He evaluated plaintiff to be mildly or moderately limited in all of the other basic work activities listed. *Id*. Additionally, Dr. Weiss rated an overall severity rating of severe. *Id*.

The ALJ assigned little weight to Dr. Weiss's opinion, finding that: (1) the severe and marked limits were inconsistent with his own examination findings (2) his opinion was inconsistent with plaintiff's ability to resume school online, to look for jobs, and to perform part-time work, (3) his opinion was inconsistent with claimant's improvement with medication, and (4) his opinion was inconsistent with the generally stable mental status examination of plaintiff, reported by Dr. Mahadeva. AR 1906.

As for the ALJ's first reason, an ALJ may discount a doctor's opinions when they are inconsistent with or unsupported by the doctor's own clinical findings. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, an ALJ cannot reject a physician's opinion in a vague or conclusory manner. *See Garrison v. Colvin*,

759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

Here the ALJ rejected Dr. Weiss's opinion because he gave an overall impairment level of "severe" despite assessing most of the categories as "none or mild" or "moderate." AR 1906. The ALJ additionally cited that the mental status examination submitted by Dr. Weiss was normal except for the claimant's history of delusions. *Id*. The ALJ summarized Dr. Weiss's clinical interview notes but did not explain how these findings were inconsistent with the moderate and severe limitations assessed. Therefore, this was not a specific and legitimate basis for rejecting Dr. Weiss's opinion.

As for the ALJ's second reason, a claimant's participation in everyday activities indicating capacities that are transferable to a work setting may constitute a specific and legitimate reason for discounting a medical opinion. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999). Yet disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits).

In this case, the ALJ concluded that Dr. Weiss's opinion was unpersuasive because it was inconsistent with plaintiff's ability to resume school online, look for jobs, and perform part-time work. However, the ALJ failed to explain how Dr. Weiss's opinion was inconsistent with these activities. Therefore, the ALJ's conclusory statement was not a specific, legitimate reason, supported by substantial evidence in the record. The evidence that the ALJ cited included treatment notes that referenced an interview and a

new job without specificity, and notes from plaintiff's participation in vocational rehabilitation. AR 1906 (*citing* 1247, 2288–89, 2293, 2310, 2340, 2342, 2346, 2362). The ALJ failed to consider other evidence of plaintiff's difficulties with vocational rehabilitation.

For example, plaintiff was hired for multiple jobs but was not able to carry out the functions of the jobs due to difficulties associated with her physical and mental symptoms. AR 2340, 2354, 2391. A career specialist at the vocational rehabilitation center noted that plaintiff "is not following through with anything that has been discussed" and that plaintiff "needs one-on-one attention . . . or she 'falls off the track.'" AR 2349, 2383. Plaintiff's activities do not indicate capacities transferable to a work setting and cannot serve as a specific and legitimate reason for discounting Dr. Weiss's opinion.

As for the ALJ's third reason, a finding that an impairment is successfully managed with treatment can serve as a clear and convincing reason for discounting a claimant's testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (the effectiveness of medication and treatment are relevant to the evaluation of a claimant's alleged symptoms); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (evidence of medical treatment successfully relieving symptoms can undermine a claim of disability).

Here, the ALJ cited a treatment note from February 2020 that indicated plaintiff was taking a new medication for her psychiatric issues that had helped significantly. AR 1906, 3311. The ALJ did not mention that after this note plaintiff continued to report challenges with her mental health including symptoms of anxiety, paranoia, and terror.

AR 2668, 2674, 2688, 3498, 3502. Dr. Weiss's opinion is not inconsistent with plaintiff's improvement with medication, but rather the ALJ failed to take into account the waxing and waning nature of plaintiff's mental health symptoms. *See Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (claimants who suffer from mental conditions may have symptoms that wax and wane, with downward cycles, cycles of improvement, and mixed results from treatment). Therefore, this was not a specific and legitimate reason for discounting Dr. Weiss's opinion.

Finally, the ALJ discredited Dr. Weiss's opinion as inconsistent with Dr. Mahadeva's generally stable mental status exam, referring to an examination completed by Dr. Ronald Sandoval — on referral from Dr. Mahadeva. AR 2464–2479. A conflict between treatment notes elsewhere in the record and an examining medical source's opinion may constitute a legitimate reason to discount the opinions of the source. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009). Yet ALJs may not "cherry-pick" evidence from the record to support their findings. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir.2001) (the ALJ erred by selectively picking some entries in the record while ignoring others). The mental status exam at issue summarized that plaintiff's "neuropsychological profile suggests cognitive impairments in attention, processing speed, executive functions, visuospatial encoding and recall" that are evidenced in her daily functioning. AR 2465. The ALJ did not indicate how this mental status exam was inconsistent with Dr. Weiss's opinion; the evidence does not support this finding of inconsistency.

For the reasons explained herein, the Court finds there is not substantial evidence to support the ALJ's discounting of this medical opinion; therefore, the ALJ erred in evaluating the opinion of Dr. Weiss.

2. <u>Dr. Mark Leveaux</u>

In July 2016 Mark Leveaux, M.D., completed a DSHS WorkFirst Documentation Request for Medical or Disability Condition form. AR 493–496. He diagnosed plaintiff with delusional disorder (in remission), and methamphetamine dependence in sustained remission. AR 493. He opined that plaintiff had a limited ability to handle stressful situations and tasks and should be limited to participation in these activities to 1–10 hours per week. AR 493–494.

The ALJ assigned little weight to Dr. Leveaux's opinion, finding that: (1) his opinion was inconsistent with plaintiff's ability to care for her family in 2016 despite family stressors, and (2) the mental status examinations around this time showed some delusions, while other examinations were normal. AR 1905.

Regarding the ALJ's first reason, the ALJ cited treatment notes — where plaintiff explained that she was dealing with difficulty with her family — as evidence that plaintiff was more able to handle stress than Dr. Leveaux had assessed. AR 1905, 506–509, 675. Yet, in these same treatment notes plaintiff is quoted saying "How long could I take the stress? Would I spring into another psychosis?" AR 508. Plaintiff's provider also noted that she was having difficulty managing her stress. *Id*. The ALJ failed to explain how this evidence is inconsistent with Dr. Leveaux's opinion that plaintiff had a "limited ability to handle stress." AR 494.

As for the ALJ's second reason, the ALJ failed to explain how varying examination results were inconsistent with Dr. Leaveaux's opinion. Additionally, plaintiff's waxing and waning symptoms are common to mental health issues and therefore the periods of limited improvement would not be a clear and convincing reason to reject her testimony. *Garrison v. Colvin*, 759 F.3d 995, 1017 (2014).

The ALJ failed to provide specific and legitimate reasons for discounting Dr. Leveaux's opinion.

3. <u>Dr. Ronald Sandoval</u>

In May 2021 Ronald Sandoval, Ph.D., completed a medical source assessment. AR 3606–08. Dr. Sandoval opined that plaintiff's mental conditions were enduring conditions that resulted in intermittent exacerbated episodes requiring a higher level of care. AR 3608. He opined that plaintiff was unable to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods of time, perform activities within a schedule, sustain ordinary routine without special supervision, work in coordination with others, complete a workday/week without interruptions from psychologically based symptoms, travel in unfamiliar places or use public transportation, set realistic goals or make plans independently of others. AR 3606–07. He indicated that plaintiff would have noticeable difficulty with every other listed mental activity. *Id*.

The ALJ assigned little weight to Dr. Sandoval's opinion, finding that his opinion was inconsistent with plaintiff's activities such as resuming school online, looking for jobs, performing part-time work, planning to volunteer for the Red Cross, seeing friends

regularly, going to church, attending medical appointments on a consistent basis, and deciding to make changes after her husband passed away. AR 1904.

The ALJ failed to explain how these activities were inconsistent with Dr. Sandoval's opinion. The ALJ's decision focused on instances in the record where plaintiff discussed her desire to work; yet the ALJ failed to account for the many documents that reference plaintiff's struggles to actually find a job or successfully perform in full-time employment. *See supra* Section A. Additionally, although plaintiff discussed that she intended to volunteer with the Red Cross and wanted to make changes after her husband passed away, the ALJ did not cite any evidence to support plaintiff's physical or mental health was stable enough for her to do these things.

The ALJ cites the function report that plaintiff completed as evidence that she was less limited in social interactions than as assessed by Dr. Sandoval, however, in the same report plaintiff stated that she had lost friends due to her delusional disorder and had difficulty getting along with friends during mental health crises. AR 403. The ALJ does not explain how this general description of plaintiff's activity level establishes she is able to perform household chores for a substantial part of the day or other activities that are transferable to a work setting. *Smolen v. Chater*, 80 F.3d 1273, 1284 and n.7 (9th Cir. 1996) (noting further that claimants need not be "utterly incapacitated" to be eligible for disability benefits, and that "many home activities may not be easily transferable to a work environment").

For these reasons, there is not substantial evidence to support the ALJ's discounting of this medical opinion; therefore, the ALJ erred in evaluating the opinion of Dr. Sandoval.

11

B. <u>Whether the ALJ erred in evaluating lay witness testimony</u>

Plaintiff assigns error to the ALJ's evaluation of lay witness opinion from Geoffery Richie, MS, LMHC. Dkt. 8 at 15–17.

When evaluating opinions from non-acceptable medical sources such as a therapist or a family member, an ALJ may expressly disregard such lay testimony if the ALJ provides "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

In July 2018 Mr. Richie completed a "Mental Impairment Questionnaire" based on a diagnostic interview and behavioral observations. AR 939–944. He diagnosed plaintiff with delusional disorder, major depressive disorder, agoraphobia, and PTSD. AR 939. He indicated that plaintiff's paranoid ideation and tendency to panic would impair her focus, and her ability to interact with others, remember, and plan. AR 943. Dr. Richie indicated that he based his evaluation on his treatment of plaintiff between January and July 2018, when he met with her nine times. AR 1927.

The ALJ assigned little weight to Mr. Richie's opinion, finding that his analysis was inconsistent with evidence of improvement with medication, normal mental status exam findings, and plaintiff's ability to resume school online, look for jobs, and to perform part-time work. AR 1907

An inconsistency between the medical evidence and the opinion of a non-acceptable medical source can constitute a germane reason for discounting that opinion. *See Baylis v. Barnhart*, 427 F.3d 1214, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence" is a germane reason for discrediting lay testimony); *Lewis v.*

*Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (An ALJ may discount lay testimony that "conflicts with medical evidence"). Similarly, a conflict between the opinion of a non-acceptable medical source and a claimant's activities of daily living can serve as a germane reason for discounting such an opinion. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2007).

In citing the inconsistency between the medical record and plaintiff's activities with Mr. Richie's opinion the ALJ has provided germane reasons for discounting the opinion.

C. <u>Whether the ALJ erred in evaluating plaintiff's subjective symptom testimony</u>

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting her subjective symptom testimony. Dkt. 8 at 17.

In regard to her physical symptoms, plaintiff testified that pain in her knees, fingers, and hands consumes her life AR 107. She testified she experiences ankle and foot pain and her ability to stand is limited to between 30 seconds and 15 minutes at a time. AR 112, 1928. She testified that she uses a cane when she leaves the house. *Id.*

Plaintiff testified that that she can usually sit for about 15 to 45 minutes at a time before she becomes stiff. AR 113. She also stated that the osteoarthritis in her shoulders restricts her ability to lift her arms higher than chest height and limits her to lifting only eight to ten pounds. AR 114–15. She testified that she has difficulty with bladder control, particularly when coughing or sneezing. AR 120.

As for her mental health symptoms, plaintiff testified that she has a lot of fears that cause her to shut down and keep her from leaving the house at times. AR 109–110 She testified that she used to struggle with alcohol dependence but has since cut down

on her use. AR 124–25. Plaintiff testified that she experiences periodic episodes of paranoia, PTSD, and psychotic symptoms 125–26. She testified that her psychotic episodes are followed by periods of deep depression where she becomes suicidal. AR 76. She testified that her symptoms fluctuate depending on what is going on. AR 80.

When asked about her living situation in the relevant period plaintiff testified that she has a caregiver who comes during the day Monday through Friday who helps her cook, clean, bathe, and use the toilet. AR 116, 1929. Plaintiff testified that she wakes up as often as three times throughout the night and struggles to sleep. AR 117. She testified that she is able to grocery shop if she uses a scooter or her cane, depending on the size of the store. AR 122, 1935.

Plaintiff testified that she was trying to volunteer for Red Cross from home for 10 hours per month. AR 1932. She also testified that during the relevant period she began to take community college classes online at Lower Columbia College. AR 1955–56. She testified that she did not believe she would be able to continue classes once they returned to in-person and she would need to walk on campus; and she was struggling with her classes because of difficulty focusing. *Id*. Plaintiff additionally testified that her pain interferes with attending church so she often cannot attend in-person and watches online; if she does attend, she cannot sit and for any sustained period and paces in the back. AR 1936. She testified that she attempted to work as a delivery driver for Door Dash and Instacart with her son but soon realized she was unable to do it. AR 1937–38.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause plaintiff's alleged symptoms. AR 1889. However, the ALJ discounted plaintiff's symptom testimony as inconsistent with (1) the medical

record, (2) plaintiff's continued job search, and (3) plaintiff's community college attendance. AR 1889.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

With respect to the ALJ's first reason, inconsistency with the objective evidence may serve as a clear and convincing reason for discounting a claimant's testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "*solely* because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir. 1995) (internal quotation marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641–42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). Here, the ALJ failed to give any specific reasons for rejecting plaintiff's testimony about her mental or physical health limitations. AR 1890–1903. The ALJ did not give specific, cogent reasons for rejecting plaintiff's testimony; the ALJ simply summarized mental-health treatment notes during the relevant period.

15

As to the ALJ's second and third reasons, an ALJ may discount a claimant's allegations of disabling limitations by contrasting that testimony with the claimant's continued work activity after her alleged onset date. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997) (noting that an ALJ may weigh inconsistencies between a claimant's testimony and his or her work activity); *see also Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (finding that the ALJ properly discounted a claimant's subjective allegations when she worked after her alleged onset date and continued to seek employment). However, as stated above, the ALJ failed to show that plaintiff's activities were inconsistent with the degree of limitations that she testified to.

Regarding her activities such as plaintiff's attempts to find employment, her attempts to complete community college classes, and her goal of being able to sustain part-time volunteer work, there is no evidence to suggest that plaintiff was ever able to actually participate in these activities. In fact, plaintiff's struggles to participate in these activities is consistent with her testimony that she wants to be able to handle such responsibility but consistently has to "back out" because of her physical and mental limitations. AR 1934. Therefore, the ALJ's decision on this point is not supported by substantial evidence; the record shows plaintiff's attempts to participate in these activities would not be inconsistent with plaintiff's subjective testimony.

D. Harmless error

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to

the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115.

The ALJ's errors are not harmless because a proper evaluation of the medical opinion evidence and plaintiff's testimony would potentially change the ALJ's assessment of plaintiff's RFC and may affect the hypotheticals provided to the Vocational Expert.

E. <u>Whether the Court should reverse with a direction to award benefits.</u>

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682–83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, the first condition of the credit-as-true rule is met. This Court has already remanded this case for further proceedings once (AR 2010–11, remand by stipulation), and simply providing another opportunity to assess improperly evaluated evidence, allowing the ALJ to have a "mulligan", does not qualify as a remand for a "useful purpose" under the first part of the credit as true analysis. *See Garrison*, 759 F.3d at 1021–22 (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

The other second credit-as-true factor is also satisfied. The ALJ failed to provide legally sufficient reasons for rejecting the opinions of Dr. Weiss, Dr. Leveaux, and Dr. Sandoval. The ALJ additionally failed to provide legally sufficient reasons for rejecting plaintiff's testimony.

As to the third condition, if the opinions of Drs. Weiss, Leveaux, and Sandoval were credited as true, particularly Dr. Weiss and Dr. Sandoval's opinion that plaintiff would be unable to complete a normal workday and work week without interruptions from psychologically based symptoms, the ALJ would be required to find plaintiff disabled on remand. AR 916; AR 3607.

Accordingly, remand for an award of benefits is the appropriate remedy.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for an award of benefits.

Dated this 3rd day of March, 2023.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge